UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
APR 25 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| TCF NATIONAL BANK, | \* | CIV 10-4149 |
| | \* | |
| Plaintiff, | \* | |
| vs. | \* | FINDINGS OF FACT, |
| | \* | CONCLUSIONS OF LAW |
| BEN S. BERNANKE; JANET L. YELLEN; | \* | AND ORDER ON MOTION FOR |
| KEVIN M. WARSH; ELIZABETH A. DUIKE; | \* | PRELIMINARY INJUNCTION |
| DANIEL K. TARULLO; and SARAH BLOOM | \* | |
| RASKIN, in their official capacities for the | \* | |
| Board of Governors of the Federal Reserve | \* | |
| System; and JOHN WALSH, in his official | \* | |
| capacity as Acting Comptroller of the Currency, | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter comes before the Court on a Motion for a Preliminary Injunction filed by Plaintiff TCF National Bank ("TCF"), and a Motion to Dismiss Plaintiff's complaint filed by Defendants Ben S. Bernanke, Janet L. Yellen, Kevin M. Warsh, Elizabeth A. Duke, Daniel K. Tarullo, and Sarah Bloom Raskin, in their official capacities as members of the Board of Governors of the Federal Reserve System (collectively "the Board"), and John Walsh, in his official capacity as Acting Comptroller of the Currency ("the OCC"). Argument on both motions was heard on April 4, 2011, in Sioux Falls, South Dakota. The Court orally announced that the motion for a preliminary injunction was denied and that the motion to dismiss the Complaint was denied. The Court reserved ruling on dismissal of the OCC for lack of jurisdiction. The Court set forth the basis of its rulings on the record. For each of the reasons stated by the Court on the record, and as follows, the motions are denied.[1]

---

[1] The court reiterates that its findings and conclusions are preliminary and may change depending on further evidence, analysis and argument.

## FINDINGS OF FACT

On July 21, 2010, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, section 1075 of which amended the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693-1693r, by adding new provisions regulating debit card interchange fees. TCF challenges portions of this statute in what is known as the Durbin Amendment. As revised, § 1693o-2(a)(1) authorizes the Board to "prescribe regulations . . . regarding any interchange transaction fee that an issuer may receive or charge with respect to an electronic debit transaction . . . ." Under § 1693o-2(a)(2), "[t]he amount of any interchange transaction fee that an issuer may receive or charge with respect to an electronic debit transaction shall be reasonable and proportional to the cost incurred by the issuer with respect to the transaction." Section 1693o-2(a)(3) requires the Board to "prescribe regulations . . . to establish standards for assessing whether the amount of any interchange transaction fee described in paragraph (2) is reasonable and proportional to the cost incurred by the issuer with respect to the transaction." To establish standards for determining whether an interchange transaction fee is reasonable and proportional, § 1693o-2(a)(4) requires the Board to consider the "functional similarity" between debit transactions and checking transactions that are "required within the Federal Reserve bank system to clear at par." The Board must also distinguish between "the incremental cost incurred by an issuing bank for its role in the authorization, clearance, or settlement of a debit transaction,"[2] and "other costs . . . which are not specific to a particular electronic debit transaction." The statute prohibits the Board from considering these latter costs in prescribing its regulation. Section 1693o-2(a)(6) exempts from regulation issuers that, together with affiliates, have assets totaling less than $10 billion.

TCF raises a facial challenge to subsections (a)(2), (a)(4) and (a)(6) of the Durbin Amendment, alleging that TCF is prevented from recovering its actual costs of providing debit service and from receiving any profit or other return from merchants on debit service. TCF contends

---

[2]These are referred to as "ACS" costs.

that paragraph (a)(6), the so-called "Small Issuers" exemption, violates the Equal Protection Clause of the Fifth Amendment to the United States Constitution.

Paragraph (a)(3) of the Durbin Amendment requires the Board to conduct rulemaking and issue regulations in final form by April 21, 2011 that establish standards for determining whether an interchange fee complies with paragraph (a)(2).[3] Prior to the hearing on April 4, TCF supplied the Court with a copy of a March 29, 2011 letter from Federal Reserve Chairman Bernanke to the Senate committee involved in banking regulation stating that the Board will be unable to issue a final rule by the statutorily mandated date of April 21, 2011, but will issue a final rule by July 21, 2011, the date upon which, by its own terms, the Durbin Amendment's debit card fee provisions go into effect.

On December 16, 2010, pursuant to subsection (a)(3), the Board issued proposed regulations, presented two alternatives as to interchange rates, and asked for comments as to which alternative it should adopt. In short, one proposal allowed a safe harbor of 7¢ per transaction, but no more than 12¢ if an issuer could show ACS costs in excess of 7¢; the alternative was a flat rate of 12¢. The Board found that current interchange was about 44¢ for an average-sized transaction. Thus it is clear that TCF will experience a revenue reduction under the proposed alternatives.

Visa does not issue debit cards; instead, it licenses member banks to do so. Visa members have the right to issue Visa cards and to acquire Visa transactions from merchants that accept Visa cards. In exchange, they must follow Visa's bylaws and regulations. Debit cards allow card holders to access their bank accounts directly and are thus generally offered only to customers who have checking accounts at the issuing bank. Nearly 38 billion debit card payments were made in the United States in 2009, and debit cards, which are now used in 35 percent of noncash payment transactions, have eclipsed checks as the most frequently used noncash payment method.

---

[3]TCF does not challenge paragraph (a)(3) of the Durbin Amendment.

In a typical debit card transaction, the consumer initiates a purchase by presenting his or her debit card to a merchant. An electronic-authorization request with a specific dollar amount and the cardholder's identity is sent from the merchant to the merchant's bank (the "merchant acquirer") to the network, which then forwards it to the issuing bank. The issuing bank checks the transaction against its file of active card accounts, and sends a message authorizing or declining the transaction through the network to the merchant. Later, the issuing bank posts a charge for the transaction to the customer's account, and the merchant acquirer posts a credit to the merchant's account. Within a few days, the network clears the transaction and determines interchange and network fees, and the issuer and the merchant acquirer send and receive payments through their accounts at settlement banks associated with the network.

Every debit card transaction generates various fees. The interchange fee is paid by the merchant acquirer to the card-issuing bank. According to the Notice of Proposed Rulemaking for Debit Card Interchange Fees and Routing:

> Networks reported that debit and prepaid interchange fees totaled $16.2 billion in 2009. The average interchange fee for all debit transactions was 44 cents per transaction, or 1.14 percent of the transaction amount. The average interchange fee for a signature debit transaction was 56 cents, or 1.53 percent of the transaction amount. The average interchange fee for a PIN debit transaction was significantly lower than that of a signature debit transaction, at 23 cents per transaction, or 0.56 percent of the transaction amount. Prepaid card interchange fees were similar to those of signature debit, averaging 50 cents per transaction, or 1.53 percent of the transaction amount.

Debit Card Interchange Fees and Routing, Notice of Proposed Rulemaking, 75 Fed. Reg.81722, 81725 (proposed Dec. 28, 2010).

Like other networks, Visa retains discretion to set debit interchange fees that are paid to issuing banks using its system, including Plaintiff TCF Bank. No statute or regulation entitles TCF to the current level or any level of debit interchange fees, but TCF currently has a contract with Visa to issue Visa debit cards until 2016 that can only be terminated by Visa for cause. In the last 15 years, with one brief exception, Visa's weighted average interchange rates to TCF have stayed within

a range of 135-165 basis points, or about 48¢ for the average transaction. The pricing is consistent with Visa's interchange pricing to its other issuers over the same period. Shortly after the Board issued its Proposed Rules, Visa and other networks (but not MasterCard) announced that they would issue two tiers of pricing - - one for exempt banks and one for regulated banks.

TCF is not required by law to provide debit card services to the public, but TCF contends that, as a business matter, it cannot drop debit service as a way to avoid the effects of the Durbin Amendment. TCF has non-debit interchange sources of revenue with which it has the ability to make a profit.

## CONCLUSIONS OF LAW

The Court has jurisdiction over Plaintiff's claims against the Board pursuant to 28 U.S.C. § 1331, except jurisdiction over the OCC is not clear at this time and the Court has reserved ruling on the motion to dismiss the OCC. Venue is proper under 28 U.S.C. § 1391(e)(3) and 28 U.S.C. § 1348.

TCF's claims of facial unconstitutionality of the Durbin Amendment are ripe for adjudication, but the claims as to the unconstitutionality of any final rule are not yet ripe because there is no regulation to review at this time.

The proper analysis of the preliminary injunction motion here is found in *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008) (en banc). That case requires the Court to examine first the likelihood that TCF will prevail on the merits of its claim that the statute is unconstitutional before the Court applies the remaining three factors of a preliminary injunction analysis: (1) whether Plaintiff will suffer irreparable harm in the absence of an injunction, (2) any harm to other interested parties, and (3) the effect on the public interest. *Dataphase Sys,. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981).

TCF is unlikely to succeed on its due process challenge to § 1693o-2(a). Under *Minnesota Association of Health Care Facilities v. Minnesota Department of Public Welfare*, 742 F.2d 442 (8th Cir. 1984), rational basis review applies to this challenge because TCF's offering of debit cards is not required by the government, nor is Plaintiff engaged in the type of "continuous production of output for the benefit of the public" that commentators have identified as the hallmark of a classic utility. Likewise, there is no monopoly power assumed to be associated with issuing debit cards. Plaintiff is not a public utility under rate case jurisprudence. The case law relied upon by Plaintiff is therefore inapplicable to its due process claim.

Applying rational basis review, § 1693o-2(a) is afforded a "strong presumption of validity" and must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). As a preliminary matter, there is a conflicting evidence as to whether increases in interchange amounts paid by merchants are due to rate increases from the networks or to transaction volume increases; and there are conflicting contentions as to whether interchange rates are less in foreign countries than in this country because the cost of debit service is transferred to the consumer. Nevertheless, given the recent rise in interchange amounts paid and the lack of competition among networks, Congress's decision to link interchange fees to issuing banks' actual costs bears a reasonable relationship to two proper legislative purposes: (1) to ensure that such fees are reasonable and (2) to prevent retailers and consumers from having to bear a disproportionate amount of costs of the debit card system. For these reasons, §1693o-2(a) is likely to satisfy rational basis review.

Although TCF has an expectation regarding future debit interchange fees based on its contract with Visa, TCF is unlikely to prevail on its due process claim because Visa retains unmitigated discretion to set debit interchange fees and there is no statutory or contractual provision guaranteeing TCF a certain level of interchange income. Fees associated with payment transactions initiated by bank customers have also been historically subject to regulation and market pressures beyond TCF's control.

Finally, TCF is unlikely to succeed on its equal protection claim, although that claim does give the Court some pause. As an economic classification not involving protected classes or constitutional rights, § 1693o-2(a)(6)'s exemption for small banks with less than $10 billion in assets is subject to rational basis review. *See Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 107 (2003). The statute must therefore be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993). A legislature's desire to help one class of businesses is a rational legislative purpose, even if it disadvantages another. *See Fitzgerald*, 539 U.S. at 109. Defendants have offered two rational bases for § 1693o-2's exemption: (1) the desire to safeguard smaller institutions from the loss of revenue that could result from interchange fee regulation and (2) the desire to ensure the availability of debit cards for consumers. The exemption is thus likely to satisfy rational basis review.

For these reasons, the Court concludes TCF has failed to demonstrate a likelihood that it will succeed on the merits of its claim that the Durbin Amendment is unconstitutional on its face. Because TCF has failed to satisfy the first step of the *Planned Parenthood* test, the Court need not proceed to apply the remaining three factors in the *Dataphase* preliminary injunction test. Accordingly,

IT IS ORDERED:

1. That Defendants' motion to dismiss, doc. 63, is denied, except that the motion to dismiss the OCC for lack of jurisdiction is taken under advisement.

2. That TCF's motion for a preliminary injunction, doc. 1, is denied.

3. That once the Board's final regulation is issued, the parties shall promptly provide additional briefing as to (1) whether there is any distinction between the property interest required to maintain a takings claim, as opposed to a due process claim; (2) whether TCF has a property interest for purposes of its takings claim; (3) the applicability of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978); and (4) any further equal protection authorities or argument not previously presented.

7

4. Once the Board's final regulation is issued, the Court will hear argument as to why it is claimed that the regulation itself is unconstitutional or otherwise contrary to law.

Dated this 25th day of April, 2011.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY /s/ Colleen Schultz
DEPUTY